UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY AARON,

                Plaintiff,

                                      Case No.: 15-cv-11014

v.

                                        HONORABLE VICTORIA A. ROBERTS

JACKIE DYER, *et al.*,

                Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION**

**FOR SUMMARY JUDGMENT (ECF No. 20)**

## I.    BACKGROUND

Mr. Aaron is a *pro se* prisoner confined in the Michigan Department of Corrections ("MDOC"). He brings this action under 42 U.S.C. § 1983, alleging that his civil rights were infringed by seven MDOC employees at the G. Robert Cotton Correctional Facility and the Chippewa Correctional Facility.

Dyer failed to answer. The other six Defendants filed motions for summary judgment (ECF Nos. 20, 23). Since filing, three have been dismissed (Hartnagel, Artis, and Ryan). The remaining Defendants are Rennia Funches, Kelly Holden, and Richard Cady. The motion is fully briefed. Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

Aaron asserts that Defendants retaliated against him for filing grievance reports – a protected activity – in violation of his First Amendment Rights. They are sued in their individual and official capacities for monetary damages and injunctive relief.

1

Against Holden, Aaron alleges verbal assault, retaliation through failing to transfer him to another cell for prior grievances, other improper conduct in connection with a denial of relief for a grievance Aaron had filed, and instructing co-workers to confiscate his legal work.

Aaron alleges Funches threatened him about his civil litigation, made statements designed to instigate confrontation with other inmates against Aaron, and improperly instructed co-workers to confiscate his legal work.

Aaron alleges Cady improperly denied his grievance request for relief, failed to intervene or otherwise stop retaliation inflicted by Cady's subordinates, and failed to mitigate exposure to unhealthy conditions that posed a risk to Aaron.

Defendants argue that Aaron did not fully exhaust administrative remedies on several of his claims and that the exhausted claims do not constitute constitutional violations. In addition, they assert entitlement to sovereign immunity insofar as they are sued in their official capacities, and qualified immunity on any individual liability.

## II.     STANDARDS OF REVIEW

### A.     Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 2507, 91 L. Ed. 2d 202 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

2

one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256 (discussing FED. R. CIV. P. 56(e)). "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(B).

It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Midwest Media Prop., L.L.C. v. Symmes Twp., Ohio*, 503 F.3d

3

456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d

171, 174 (6th Cir. 1984)) (internal quotation marks omitted). If the nonmoving party does

not respond with specific facts showing a genuine issue for trial, summary judgment is

appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

    In addition, when, as here, the non moving party files a verified complaint, ECF

No. 1 at 50 and ECF No. 1-1 at 1, the verified allegations carry the same weight as an

affidavit in response to the motion for summary judgment. *See* 28 U.S.C. § 1746;

*Williams v. Browman*, 981 F.2d 901, 904-05 (6th Cir. 1992).

### B.    *Pro se* Litigants

    The summary judgment rules will be qualified to the extent necessary in light of

Aaron's status as a *pro se* litigant. When reviewing *pro se* complaints, the Court must

employ a less stringent standard than if the complaint had been drafted by counsel.

*Haines v. Kerner*, 404 U.S. 519, 520 (1972). But "leniency granted to pro se petitioners .

. . is not boundless." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Further,

courts are not required to conjure unstated allegations or guess the plaintiff's claims.

*Wells v. Brown et al.*, 891 F.2d 591, 594 (6th Cir. 1989) (citations omitted). Even *pro se*

litigants must meet minimal standards. *Id.*

## III.    DISCUSSION

### A.    Exhaustion of Administrative Remedies

    Defendants argue that Aaron failed to exhaust administrative remedies on

several of his claims. As a result, they say he cannot recover through litigation in federal

court. This is an affirmative defense; "a prisoner may not be required to specifically

plead or demonstrate exhaustion in his complaint." *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009) (citing *Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 922-23, 166 L. Ed. 2d 798 (2007). Defendants must demonstrate not only that Aaron failed to raise a dispute of material fact, but also that they have satisfied their burden to show that administrative remedies were not exhausted.

The exhaustion provision of the Prison Litigation Reform Act ("PLRA") states:

> No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. *Jones*, 549 U.S. at 204. In *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 165 L. Ed. 2d 368 (2006), the Supreme Court interpreted the PLRA as requiring "proper exhaustion," meaning that a prisoner must "make full use of the prison grievance process" and "compl[y] with the system's critical procedural rules." *Id.* at 93–95; *Himmelreich v. Federal Bureau of Prisons*, 766 F.3d 576 (6th Cir. 2014). Exhaustion is mandatory, and applies to suits with respect to prison conditions regardless of the type of relief sought. *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009) (citing *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *Porter v. Nussle*, 534 U.S. 516, 520, 122 S. Ct. 983, 152 L. Ed. 2d 12 (2002)). The prison's requirements, not the PLRA, define the boundaries of proper exhaustion. *Jones*, 549 U.S. at 218.

Defendants assert that MDOC Policy Directive 03.02.130 sets forth exhaustion

5

procedures and requires that all sued parties be named in an initial grievance. They say Aaron failed to do this or file a Step III appeal in some of his grievances. Defendants rely on *Burton v. Jones*, 321 F.3d 569, 574 (6th Cir. 2003), for a holding that was subsequently abrogated in a unanimous decision by the United States Supreme Court. ECF No. 20 at 24; *Jones*, 549 U.S. at 199 (2007). In *Jones v. Bock*, the Supreme Court clarified that the PLRA does not require a plaintiff to state all defendant's names in an initial grievance, only compliance with state prison grievance policies. Accordingly, since the policy in effect when the *Jones* grievances were filed did not require certain individuals be named, it was error to impose a "name all defendants" requirement.

The same policy directive number at issue in *Jones* is now before this Court, but on different factual grounds. *Jones* examined MDOC Policy 03.02.130, effective Nov. 1, 2000. The State of Michigan has revised Policy Directive 03.02.130 several times since 2000, thus limiting the application of the Supreme Court's ruling on Aaron's claims.

The revised directives, which were in effect throughout 2011-2013 when Aaron filed his grievances, provide guidance about what information must be included: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 ¶ R (July 9, 2007). In addition, the text before and after that sentence requests that the information be limited to facts and that the information be limited to the grievance form itself (of which only one third of the space is available for narrative description). *Id.*

Defendants also rely on *Reed-Bey v. Pramstaller*, 603 F.3d 322, 323 (6th Cir.

6

2010), a Sixth Circuit opinion that reached a ruling contrary to the one they now seek. That case quotes language similar to the current Paragraph R, but the Sixth Circuit overruled this Court's grant of summary judgment to defendant prison officials notwithstanding procedural failure. In *Reed-Bey*, the Sixth Circuit held that the State of Michigan's substantive ruling on a grievance constituted an implicit failure to assert its own procedural defense: by failing to assert the procedural defect of not listing all names and instead ruling substantively on the grievance, the State waived its ability to prevent judicial review.

Aaron says that he complied with the MDOC grievance requirements for all of his grievances and that the MDOC answered and ruled on the merits of his grievances. ECF No. 23 at 14. He claims that the following grievances have been administratively exhausted: JCF-11-12-2717-17b; JCF-12-01-0209-17b; JCF-12-01-0163-17a; JCF-12-01-0206-26b; JCF-12-01-0207-17f; JCF-12-02-0398-07e; JCF-12-03-0485-28b; URF-14-10-3259-3b; URF-14-10-3280-19d; and an additional unnumbered grievance to which Aaron has not received a response. He notes that JCF-12-03-0485-28b was rejected, but Defendants still answered and replied to the allegations.

Defendants take different positions on exhaustion for each grievance.

### 1.      Non-Pertinent Grievances Prior to the Complaint

First, Defendants say that 5 of Aaron's 11 Step III grievance appeals were filed in 2011 while he was incarcerated at JCF and precede all of the allegations made in Aaron's Complaint. ECF No. 20 at 23-23. Defendants provide four grievance numbers, restating one of them. The prior grievances are: JCF-11-08-1755-17b JCF-11-08-1756-17b, JCF-11-08-1640-17a (listed twice), and JCF-11-03-0515-13a.

7

Aaron does not attach those grievances to his Complaint nor does he reference them in his Response. Any claims arising out of those grievances are **DISMISSED**.

### 2.      Grievances that Defendants Do Not Challenge

Second, Defendants do not contest exhaustion of administrative remedies for claims JCF-12-01-0209-17b, JCF-12-01-0163-17a, and JCF-12-01-0206-26b. ECF No. 20 at 25. Those claims will be addressed for qualified immunity in section III(C), below.

### 3.      Grievances that Will be Considered Substantively - Those that are Challenged, Yet Provide Adequate Notice

Third, Defendants assert that Aaron did not exhaust administrative remedies for grievance JCF-11-12-2717-17b, because he did not name Cady or Funches and did not allege any misconduct by Holden in Step I. ECF No. 20 at 24. Aaron clarified that this grievance was only filed against Dyer and Holden, not Cady as Defendant's assert. ECF No. 23 at 15. Instead, Aaron had a separate grievance for Cady, who was only mentioned to provide context in this Step II appeal. Aaron does not mention Funches in responding to Defendants' arguments for this grievance. As a result, any claims against Cady and Funches arising out of this grievance are **DISMISSED** for failure to exhaust administrative remedies. The Response at Step I indicates at least a fact question about the degree to which Holden was involved. Aaron's claims against Holden in this grievance were administratively exhausted and will be analyzed substantively.

### 4.      Non-Exhausted Grievances that Will be Dismissed

Fourth, Defendants say Aaron has not properly exhausted his administrative remedies in all remaining grievances since he did not follow the procedures of the policy

by filing a Step III grievance appeal prior to filing this lawsuit. ECF No. 20 at 26. Defendants do not specify which grievances this statement covers. Reference to Aaron's Complaint indicates that the outstanding grievances include: JCF-12-03-0485-28b; URF-14-10-3259-3b; URF-14-10-3280-19d; and the grievance with no number and no response.

Aaron does not present evidence to suggest that the unnumbered grievance complied with MDOC policies. Because no other information is provided by either side about this unnumbered grievance, the Court cannot evaluate whether it complies with MDOC policies; any claims arising from it are **DISMISSED** for failure to exhaust administrative remedies.

Grievance JCF-12-03-0485-28b was rejected at Step I for non-compliance with the policy; it was not answered on the merits. Pursuant to Policy Directive 03.02.130 paragraph I, "A grievant whose grievance is rejected may appeal the rejection to the next step as set forth in this policy." *See, e.g.*, ECF No. 20-2 at 3. Aaron does not present any information that the grievance was appealed further. Aaron is unable to demonstrate exhaustion of administrative remedies. Moreover, because the grievance was rejected on procedural grounds and was not denied on its merits, the *Reed-Bey* waiver rule does not apply. Claims arising out of this grievance are **DISMISSED**.

Defendants' assertion about the absence of a Step III appeal is also correct for grievance URF-14-10-3259-3b. Aaron does not submit the State's letter confirming receipt of his Step III appeal and does not provide a Step III decision. Thus, administrative remedies are not satisfied; that grievance's claims are **DISMISSED**.

9

Defendants' broad statement about the absence of a Step III appeal is incorrect with respect to grievance URF-14-10-3280-19d. The State's Step III response is dated January 23, 2015. ECF No. 1-2 at 41. But, Aaron is still unable to demonstrate exhaustion of administrative remedies for this grievance because it does not comport with the MDOC policy requiring that all parties be named, at least as applied to the Defendants who brought this motion. The grievance responses at the various steps of the process do not mention Holden, Cady, or Funches. Moreover, neither the Complaint nor the Response mention any named Defendant with respect to these grievances. Aaron has not made a showing sufficient to state a claim against any of the named Defendants in this motion. Claims arising out of this grievance are **DISMISSED**.

### 5.     Grievances that Will be Considered Substantively - Those that are Challenged, Yet Step III was Filed

Defendants' allegations about the absence of a Step III appeal are incorrect about other grievances. Defendants do not state that administrative remedies were exhausted on grievance JCF-2012-01-0207-17f, so their residual claim that Aaron has not properly exhausted his administrative remedies because he did not file a Step III applies. But Defendants also provided the State's response to grievance JCF-12-01-0207-17f at Step III, which notes that the grievance had been fully reviewed. ECF No. 20-3 at 12. The Step III response is dated May 16, 2012, which is before this lawsuit was filed on March 18, 2015. Thus, Defendant's have not established that Aaron failed to exhaust administrative remedies by not submitting a Step III appeal.

The same is true with grievance JCF-12-02-0398-07e. The State's Step III

10

response is dated July 12, 2012, well before this suit was filed. Aaron has exhausted administrative remedies on this grievance.

### 6.     Summary of Grievances that Survive Exhaustion

In summary, Defendants do not raise exhaustion for grievances JCF-12-01-0209-17b, JCF-12-01-0163-17a, and JCF-12-01-0206-26b. Defendants do not meet their burden to show that grievance JCF-11-12-2717-17b provides inadequate information and notice; that claim survives exhaustion as to Holden only. Grievances JCF-12-01-0207-17f and JCF-12-02-0398-07e were appealed through Step III, and thus, were exhausted. Claims arising out of these grievances will be reviewed substantively.

### B.     Sovereign Immunity

Defendants contend that sovereign immunity prevents Aaron from maintaining his suit against the named Defendants to the extent that they were sued in their official capacities. The Court agrees.

Defendants are entitled to sovereign immunity for Aaron's 42 U.S.C. § 1983 claims made against them in their official capacities. The Eleventh Amendment generally bars a suit for money damages brought in federal court against a state unless the state has waived its sovereign immunity or consented to be sued. The State of Michigan has not done so. *See Kovacevich v. Kent State Univ.*, 224 F.3d 806, 817 (6th Cir. 2000). The Defendants named in their official capacities are entitled to immunity with respect to Aaron's § 1983 claim because "a suit against a state official in his or her official capacity is [ ] a suit against the official's office," which is "no different from a suit against the State." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304,

11

105 L. Ed. 2d 45 (1989); *McCoy v. Michigan*, 369 F. App'x 646, 654 (6th Cir. 2010).

### C.   Qualified Immunity

Aaron's § 1983 claims against the Defendants in their individual capacities, are not barred by sovereign immunity. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000); *McCoy v. Michigan*, 369 F. App'x 646, 654 (6th Cir. 2010). But, they may be entitled to qualified immunity for claims against them in their individual capacities.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). Qualified immunity involves a two-step inquiry. First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred. *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151, 2156, 150 L. Ed. 2d 272 (2001). Second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id.*; *see also Dickerson v. McClellan*, 101 F.3d 1151, 1158 (6th Cir. 1996). The Court may address these steps in any order. *See Pearson v. Callahan*, 555 U.S. 223, 239-43, 129 S. Ct. 808, 820-22, 172 L. Ed. 2d 565 (2009).

### 1.   Clearly Established

Qualified immunity analysis requires the constitutional violation to be "clearly established." "For a right to be clearly established, '[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing

violates that right.'" *Bell v. Johnson*, 308 F.3d 594, 601-02 (6th Cir. 2002) (quoting

*Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *Anderson v. Creighton*,

483 U.S. 635, 639, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

Defendants make a conclusory assertion that their actions were objectively

reasonable under the circumstances [and presumably not "clearly established"] without

providing any analysis in support. ECF No. 20 at 37. The Court disagrees. In *Newsom*

*v. Norris*, 888 F.2d 371 (6th Cir. 1989), the Sixth Circuit "clearly established that an

inmate need not show that the retaliatory action, standing alone, was sufficiently

egregious to violate the Constitution." *Bell*, 308 F.3d at 609 (6th Cir. 2002). "[E]ven

minimal infringement upon First Amendment values constitutes irreparable injury." *Id.*

(quoting *Newsom*, 308 F.3d at 378). Accordingly, Defendants' alleged violations were

clearly established in 2011 and 2012 when the conduct occurred.

## 2.   Constitutional Violation: First Amendment Claims

Proper qualified immunity analysis requires a court to determine whether, in

viewing the facts in the light most favorable to the plaintiff, a constitutional violation

occurred. Aaron asserts one violation: retaliation in violation of his First Amendment

rights.       Although Defendants believe that Aaron alleges Eighth Amendment

violations of the proscription against cruel and unusual punishment, Aaron expressly

says he did not bring an Eighth Amendment claim but he is not opposed to his

Complaint being deemed to raise Eighth Amendment claims. ECF No. 23 at 6. The

Court will take Aaron at his word: to the extent any part of his Complaint can be

construed as alleging an Eighth Amendment violation, those claims are dismissed.

13

Aaron asserts that Defendants retaliated against him for filing grievances against them and their colleagues. The controlling legal test for prisoners' First Amendment retaliation claims was set forth by the Sixth Circuit Court of Appeals in *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999):

> A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Id.* at 394. "Although the elements of a First Amendment retaliation claim [are] constant, the underlying concepts that they signify will vary with the setting – whether activity is 'protected' or an action is 'adverse' will depend on context." *Bell v. Johnson*, 308 F.3d 594, 602-03 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 388).

Defendants only challenge the second of the three elements – adverse action.

An action is "adverse" if it "would deter a person of ordinary firmness from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396. "While certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this standard is intended to weed out only inconsequential actions." *Id.* at 398. As a result, "government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of the constitutional right." *Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (quoting *Thaddeus-X*, 175 F.3d at 386). "[P]risoners 'may be required to tolerate more than average citizens before an action taken against them is considered adverse,'" but an act against a prisoner need not be egregious to be

adverse. *LaFountain v. Harry*, 716 F.3d 944, 948 (6th Cir. 2013) (quoting *Thaddeus-X*, 175 F.3d at 398).

Aaron alleges a string of retaliatory acts occurred from late 2011 through 2012, reflected in several grievances he filed during that time period and described chronologically below.

### a.   Grievance JCF-11-12-2717-17b

The first grievance is JCF-11-12-2717-17b, which was filed on December 22, 2011, against Dyer and Holden, Dyer's supervisor, alleging that Aaron was reassigned to an unhealthy cell with a dangerous and mentally ill cellmate because he previously filed grievances against Dyer's husband who also worked at the prison. ECF No. 1 at 17. Aaron says his new cell is unhealthy because his cellmate is unhygenic, his cellmate smears feces on himself and all around the cell, and because Dyer refused to allow him to have proper cleaning products to disinfect the cell. ECF No. 1 at 17, 35, 36. The new cellmate is said to be dangerous and mentally ill because he, for example, has demanded that Aaron help him commit suicide." ECF No. 1 at 36. Aaron alleges that his cell reassignment happened one day after "Lansing ordered an investigation regarding my grievance against Dyer's husband." ECF No. 1-1 at 30. The retaliatory nature of the transfer is said to be corroborated by Dyer asking, while laughing, "You like it better down there?" ECF No. 1-1 at 30. Aaron filed this grievance to request that he "not be subjected to any more retaliation, e.g., from Dyer's coworkers, shakedowns, confiscations, setups, etc." ECF No. 1-1 at 30.

The Step II and III appeals assert that Cady falsified the reasons in the Step I response to cover for Dyer and her coworkers' wrongdoing. Aaron supports this claim

15

by providing statements allegedly made by the Inspectors to him stating that he was not under investigation as stated in the Step I response. The Step III response says that "the response you received at Step I reflects that your issues were in fact considered and appropriately responded to at the facility level." ECF No. 1-1 at 35. Although Aaron names Cady in the two appeals, he says that Cady is not a party to this grievance and that grievance JCF-12-01-0206-26b sets forth retaliatory allegations against Cady. ECF No. 23 at 5.

Defendants deny a retaliatory motive. The initial grievance names Holden, but says only that Holden told Aaron that she did not move him. The Step I response, which was drafted by Cady, indicates that Holden told Cady that she had received information indicating "Aaron may be up to some mischief there in that cell," and so "it was decided" that a move would "keep Aaron out of trouble." ECF No. 1-1 at 31. As a matter of law, Defendants say that a transfer is not an adverse action. ECF No. 20 at 33.

"Cell assignments are a normal part of prison life, and thus typically do not amount to an adverse action," absent extraordinary circumstances. *LaFountain*, 716 F.3d at 949. In *Lafountain*, The Sixth Circuit found that forcing a prisoner to cell with a mentally ill prisoner who presented foreseeable risks – the mentally ill prisoner had threatened to use one of two knives he hid in the prison yard on the plaintiff – constituted an adverse action. *Id.*

Aaron's assertion that he was reassigned to a cellmate, who had a well-known and long history of mental illness that manifested in extremely unhygienic practices, constitutes an extraordinary circumstance, especially if it is true that he was denied supplies to clean his cell. *See, e.g.*, *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir.

16

1996) (refusal to provide inmate with hygiene items). As stated in the administrative remedies section, the nature of Holden's involvement in the transfer is a question of fact. *See* ECF No. 1 at 38; ECF No. 20 at 15-16. Summary judgment on claims against Holden pertaining to retaliatory reassignment and cell conditions is **DENIED**.

### b.   Grievance JCF-2012-01-0163-17a

In grievance JCF-2012-01-0163-17a, filed January 19, 2012, Aaron alleges that Funches engaged in retaliatory behavior against him on January 17, 2012, the day after he filed a Step II appeal in grievance JCF 2011-12-2717-17b. In Step I of grievance JCF-2012-01-0163-17a, Aaron alleges that Funches threatened him about his civil litigation, that Funches would not respond to his questions, and that Funches told Aaron to "Tell the truth [...] tell them you're a snitch" in front of other prisoners. ECF No. 1-1 at 41. Aaron alleges that as a result, people purportedly affiliated with Funches – the "Jack-Town Posse" prison gang – assaulted, accosted and threatened Aaron about Funches' statements. ECF No. 1 at 19-20; ECF No. 1-1 at 41. Aaron alleges in his Step III appeal that Holden accosted and interrogated him during a "second interview" on the grievance within hours after it was sent to the grievance coordinator. ECF No. 1 at 21. These allegations appear below in grievance JCF-2012-01-0209-17b.

Funches' alleged statements constitute an adverse action. *See Aaron v. Tyluki*, 2013 WL 4670902 at *7-8, 12-cv-14866 (E.D. Mich. 2013) (citing *Jackson v. Peterson*, No. 96-1144, 1996 WL 636180 (6th Cir. 1996)) (listing numerous opinions denying summary judgment under similar facts). Summary judgment on claims against Funches pertaining to this grievance and course of conduct is **DENIED**.

17

### c.      Grievance JCF-2012-01-0209-17b

In grievance JCF-2012-01-0209-17b, Aaron says he was "ambushed" by Holden on January 20, 2012 regarding a grievance he filed against Funches the night before on January 19, 2012 (above). ECF No. 1 at 23; *see also* ECF No. 20-3 at 28 (the Step III appeal of grievance JCF-12-01-0163-17a). Holden allegedly called Aaron to her office and demanded to know who authored the grievance against Funches, demanding Aaron tell her that it was authored by particular inmate. ECF No. 1 at 23-25; ECF No. 20-3 at 25. The grievance reviewers monitored the alleged retaliatory conduct over a period of several weeks, during which Aaron alleges he suffered severe anxiety that caused him to lose sleep, appetite, and to live in a state of constant fear. ECF No. 1 at 26. In the Step III appeal, Aaron alleges that after he filed the grievance, Holden told him, "if you don't like the way you're being treated, think first about writing grievances next time" and "save us the problem of getting rid of you." ECF No. 20-3 at 23.

Defendants believe that Aaron claims he has been harassed and retaliated against by the housing staff for writing grievances. The grievance was denied at Step I because there were no continuing instances of retaliation and because the staff reported they have not retaliated against Aaron. The denial notes that Holden stated that she has not attempted to intimidate or ambush the prison [sic]. Aaron's Step II appeal reiterated concerns of retaliation. The Step II response indicates that a grievance coordinator attempted to intervene and that the coordinator offered to move Aaron, but Aaron refused that relocation offer. Finding no proof of retaliation, and recommending continued work with JCF Psych. Services, the Step II appeal was denied. ECF No. 20-3 at 24.

18

"Rough words are common in prisons, particularly coming from prisoners. Such language does not deter 'ordinary prisoners' from filing actions, and did not deter Plaintiff from pursuing this lawsuit, or even from pursuing his grievance to Steps 2 and 3." *Root v. Towers*, No. 99-cv-70867-DT, 2000 WL 424193, at *2 (E.D. Mich. Mar. 31, 2000) aff'd, 238 F.3d 423 (6th Cir. 2000). These claims allege only "intimidating" or "ambush" questioning by Holden; they are **DISMISSED**.

### d.   Grievance JCF-12-01-0206-26b

After filing grievances for several allegedly retaliatory encounters with Dyer, Funches and Holden, Aaron contacted Cady, their supervisor, on January 24, 2012, to resolve the issues. ECF No. 1 at 29. Aaron says that Cady instead engaged in retaliatory conduct that adopted and endorsed his subordinates' behavior, leading to grievance JCF-12-01-0206-26b against Cady. Aaron alleges that Cady said "I told you to stop filing those grievances," made a reference to Charlie's Angels suggesting that, as in the popular movie, the three women (Dyer, Funches, and Holden) carried out their male superior's (Cady's) requests, reiterated that he "warned [Aaron] to stop writing grievances," and cautioned that Aaron had a bulls-eye on his back. ECF No. 20-3 at 20. During that encounter, Cady also allegedly made reference to an effort to transfer Aaron, stating "Don't worry about my girls; you won't be here long." ECF No. 20-3 at 20. In addition, the Step I grievance alleges that Cady told Aaron "they" do not care about his grievances, made an expletive-laden sarcastic suggestion about where Aaron could file his grievances, and warned Aaron to "stop looking at [him] like that" because he "had to put down a black [expletive] before." ECF No. 20-3 at 20. Further, Aaron alleges

19

that Cady told him that he is "sick and tired of all you black [expletive] writing me and my staff up. I'm going to put an end to that [expletive]." ECF No. 1 at 30.

Aaron was transferred to Chippewa Correctional Facility on August 6, 2013.

Defendants say there can be no claim of retaliation for a transfer from one prison to another, relying on *Smith v. Yarrow*, 78 Fed. Appx. 529, 543 (6th Cir. 2003). This is misleading; transfers are not *per se* immune from retaliation suits. The Sixth Circuit's position is better articulated in *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010), which states:

> Although several unpublished Sixth Circuit cases have held that transfers to the general population of another prison are not typically an adverse action, *see Smith v. Yarrow*, 78 Fed. Appx. 529, 543 (6th Cir. 2003) (collecting cases), this court has held in other cases that a prison transfer or the threat of a transfer can be an adverse action if that transfer would result in foreseeable, negative consequences to the particular prisoner.

*Id.* at 474; *see also Titlow v. Corr. Med. Servs., Inc.*, 654 F. Supp. 2d 651, 656 (E.D. Mich. 2009) (weighing summary judgment on an allegedly retaliatory transfer upon a lengthy discussion of "retaliatory motive."). Defendants have not offered sufficient factual support to show the absence of negative consequences or a retaliatory motive.

Several other aspects of this grievance cast doubt on the appropriateness of summary judgment. There is at least a question of fact about whether "you won't be here long" was either a threat or admission of pending effort to transfer Aaron. Cady's declaration that he would "put an end to" Aaron's grievances could constitute a threat to take action. Cady's references to prior warnings and a "bulls-eye" on Aaron's back as explanations for why Aaron had encountered trouble with Cady's subordinates could reasonably be treated as acknowledgment and adoption of that prior conduct.

Regardless, because physical threats – in this case death threats through Cady's

20

statements about having had to "put down," i.e. kill, people before – "would likely have a strong deterrent effect" on an ordinary person, and, thus, are adverse actions, summary judgment is **DENIED** for these claims against Cady. *Thaddeus-X*, 175 F.3d at 398.

### e.    Grievance JCF-12-01-0207-17f

Grievance JCF-12-01-0207-17f names several Defendants, but is, in substance, only against Dyer. Aaron alleges that on January 24, 2012, just one day after he filed a grievance against Holden, Dyer expressed dissatisfaction with Aaron filing grievances against Dyer's husband, used racial epithets and insults towards Aaron, conducted a "shake-down" of Aaron's cell in which she threw around his legal work, admitted that she took some of his belongings, and told him that she and Cady, her supervisor, were going to transfer Aaron "Up North." ECF Nos. 1 at 27-28; 20-3 at 15.

Aaron says that this grievance is not against Cady and that grievance JCF-12-01-0206-26b addresses Cady's retaliatory conduct. The Court will take Aaron at his word: to the extent this grievance can be construed as alleging a claim against Cady, it is incorporated in the prior analysis of JCF-12-01-0206-26b, in which the Court denied summary judgment. In addition, Defendants do not make specific arguments about particular grievances or cite to the record when discussing alleged conduct by each Defendant. But, they make general arguments against liability in 1983 suits when plaintiffs fail to make a clear showing that each named defendant was personally involved in alleged activity. Although Aaron alleges that actions were taken in response to him filing a grievance against Holden, Aaron does not allege any wrongdoing or adverse action by Holden or Funches. Consequently, claims against Holden and

21

Funches arising out of grievance JCF-12-01-0207-17F are **DISMISSED**; claims against Cady will go forward.

### f. Grievance JCF-12-02-0398-07e

Aaron alleges in grievance JCF-12-02-0398-07e that Dyer interfered with mail distribution by mishandling forms pertaining to his misconduct proceedings. His Complaint emphasizes that "[t]his is the third grievance filed on (RUO) Jackie Dyer." ECF No. 1 at 32. The Step I grievance refers only generally to "C/O Dyer and her coworkers." Neither his grievance nor subsequent appeals otherwise implicates any of this motion's Defendants. Holden is mentioned only once – in the response to the Step II appeal – and only to note that Dyer could not have done the alleged acts or delivered institutional mail unless first directed by Holden, which she was not. Aaron has not alleged acts by Cady, Holden, or Funches sufficient to constitute an adverse action. Claims against them arising out of grievance JCF-12-02-0398-07e are **DISMISSED**.

## IV. CONCLUSION

1. Summary judgment is **GRANTED** for claims made in several grievances that were not administratively exhausted; those are: JCF-11-12-2717-17b (Cady and Funches), JCF-12-03-0485-28b (all Defendants), URF-14-10-3259-3b (all Defendants), URF-14-10-3280-19d (all Defendants), and the grievance with no number and no response (all Defendants).

2. Claims related to grievances JCF-2012-01-0209-17b (Holden), JCF-12-01-0207-17f and JCF-12-02-0398-07e are administratively exhausted, but do not provide sufficient facts to establish an adverse action took place by one of the Defendants.

Summary judgment is **GRANTED**.

3.     Summary judgment is **DENIED** for actions related to JCF-12-01-0206-26b (Cady), JCF-11-12-2717-17b (Holden), and JCF-2012-01-0163-17a (Funches). This case will proceed to trial on these claims.

4.     Finally, Dyer has failed to answer, despite this Court's order to do so. ECF No. 38 ("On December 30, 2015, the Waiver of the Service of a Summons as to Jackie Dyer was returned executed. Dyer's answer to the complaint is due 60 days from the date of service.") Her answer or motion was due on February 29, 2016. She is subject to default judgment being entered against her.

**IT IS ORDERED**.


                                        S/Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated:  March 31, 2016

The undersigned certifies that a copy of this document was served on the attorneys of record and Jeffrey Aaron by electronic means or U.S. Mail on March 31, 2016.

s/Linda Vertriest
Deputy Clerk

23