UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEFFREY AARON,

    Plaintiff,

v.                                                  Case No. 15-11014
                                                  Honorable Victoria A. Roberts

JACKIE DYER, *et al.*,

    Defendants.
_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL [Doc. 102]

**I. INTRODUCTION AND BACKGROUND**

Plaintiff Jeffrey Aaron, a prisoner confined in the Michigan Department of Corrections ("MDOC"), filed this case *pro se* against seven MDOC employees, alleging that they retaliated against him for filing grievances in violation of his First Amendment rights. After the Court ruled on dispositive motions, Aaron retained Solomon Radner as counsel.

The case proceeded to trial in January 2017 against the four remaining Defendants – Jackie Dyer, Rennia Funches, Kelly Holden and Richard Cady. With consent of the parties, Magistrate Judge David R. Grand conducted *voir dire* (i.e., jury selection) on January 9, 2017. On January 12, the jury returned a verdict in favor of Defendants, finding no cause of action. The Court entered judgment to that effect on January 17.

On January 31, 2017, Aaron filed a *pro se* Motion for New Trial pursuant to Federal Rule of Civil Procedure 59. [Doc. 102]. On July 6, 2017, well after the motion

had been fully briefed, Aaron filed a supplemental pleading with additional evidence that he says he recently discovered. [Doc. 106].

For the following reasons, Aaron's Motion for New Trial [Doc. 102] is **DENIED**.

## II.  ANALYSIS

### A.  Aaron May Proceed *Pro Se*

Defendants say the Court should strike Aaron's motion because he filed it himself rather than having counsel file it on his behalf. In his reply brief, Aaron says he has been representing himself since the jury verdict. Therefore, Aaron may proceed without counsel, and the Court will not strike his motion.

However, Radner and his co-counsel are still listed on the docket as counsel of record for Aaron. So that the docket accurately indicates that Aaron is *pro se*, the Court **TERMINATES** Radner and his co-counsel as Aaron's active counsel of record.

### B.  Aaron's Motion for New Trial

The Court may grant a new trial under Rule 59 "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "The language of Rule 59(a) has been interpreted to mean that a new trial is warranted when a jury has reached a 'seriously erroneous' result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *E.E.O.C. v. New Breed Logistics*, 783 F.3d 1057, 1066 (6th Cir. 2015) (citation omitted). The Court has broad discretion in deciding whether to grant a new trial. *Clark v. Esser*, 907 F. Supp. 1069, 1073 (E.D. Mich. 1995). However, a motion for new trial may not be granted unless the moving party

2

establishes that he or she suffered prejudice. *Simmons v. Napier*, 626 Fed. Appx. 129, 132 (6th Cir. 2015).

Aaron says he is entitled to a new trial because: (1) he presented evidence proving he was moved in retaliation for filing grievances; (2) Defendant Dyer gave false testimony and is not credible, "as the truth of the matter was as stated in Plaintiff's grievance," [Doc. 102, PgID 1006]; (3) the jury had a right to know about a "sham affidavit" and false testimony Defendant Holden gave in another case; (4) the jury should have known that every Defendant has been sued by other prisoners for their conduct involving similar issues; (5) the jury should have heard the testimony of two prison inspectors, and they should have known that he would have called them as witnesses if Defendants would not have indicated they planned to call them as witnesses; and (6) the jury was tainted.

### 1. The Verdict is Supported by Sufficient Evidence

Aaron says the Court should grant a new trial because he proved his case – i.e., that Defendants retaliated against him for engaging in protected conduct.

Defendants argue that Aaron cannot challenge the sufficiency of the evidence because, although Aaron orally moved for directed verdict during trial, his failure to attach the trial transcript to his motion prevents the Court from determining "what issues, if any, were preserved by that motion." [Doc. 104, PgID 1021]. In making this argument, Defendants rely on *S. Ry. Co. v. Miller*, 285 F.2d 202 (6th Cir. 1960), for the proposition that "the question of the sufficiency of the evidence to support the jury's verdict is not available as a ground for a motion for new trial" if "[n]o motion for directed verdict ha[d] been made." *Id.* at 206.

Defendants misconstrue the holding in *Miller*. In that case, the Sixth Circuit "distinguished between motions made pursuant to Rule 50, which claim there is *insufficient evidence* to send a case to a jury, and Rule 59 motions, which claim that the jury verdict was against the *weight of the evidence*." *Hillside Prods., Inc. v. Cty. of Macomb*, 389 Fed. Appx. 449, 456 (6th Cir. 2010) (emphasis in original). Contrary to Defendants' position, a motion for directed verdict is not a prerequisite to an argument, under Rule 59, that the verdict was against the great weight of the evidence. *See id.* ("The district court abused its discretion when it misapplied the law and held that a Rule 50 motion is a prerequisite for a Rule 59 motion that the weight of the evidence does not support the jury's verdict."); *Maclin v. Holden*, No. 12-12480, 2016 WL 1161526, at *1 (E.D. Mich. Mar. 23, 2016) (holding that the Court can consider a claim that the verdict was against the great weight of the evidence in a Rule 59 motion for new trial, even where no motion for directed verdict was made regarding the sufficiency of the evidence).

Aaron argues that the verdict was against the great weight of the evidence; Defendants acknowledge this in their response, stating that "[Aaron] argues repeatedly that he presented evidence on which the jury should have ruled in his favor." [Doc. 104, PgID 1020]. Accordingly, Defendants' argument fails, and the Court will consider Aaron's sufficiency of the evidence claim.

Nevertheless, Aaron is not entitled to a new trial; the verdict was not against the great weight of evidence.

When deciding a motion for new trial on the ground that the verdict is against the great weight of the evidence, the Court may not set aside the verdict simply because it

4

believes another outcome is more justified.  *Denhof v. City of Grand Rapids*, 494 F.3d 534, 543 (6th Cir. 2007).  Moreover, "[c]ourts are not free to reweigh the evidence and set aside the jury verdict[] merely because the jury could have drawn different inferences or conclusions or because [the] judge[] feel[s] that other results are more reasonable."  *Bruner v. Dunaway*, 684 F.2d 422, 425 (6th Cir. 1982) (citation omitted).  Rather, the Court must "uphold the verdict if it was one which the jury reasonably could have reached."  *Armisted v. State Farm Mut. Auto. Ins. Co.*, 675 F.3d 989, 995 (6th Cir. 2012).  Because of this, "granting a new trial on this ground is a rare occurrence – it happens only when the verdict is said to be unreasonable."  *Id.*

Throughout his pleadings, Aaron gives his interpretation of the evidence, arguing that Defendants were not credible witnesses and summarily stating that he presented sufficient evidence to establish that Defendants retaliated against him for filing grievances.  By making these arguments, Aaron essentially asks the Court to reweigh the evidence and substitute his inferences and conclusions for those of the jury.  This is insufficient to demonstrate that Aaron is entitled a new trial on this ground.

To prove his retaliation claim, Aaron was required to establish by a preponderance of the evidence that: "(1) [he] engaged in protected conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by [his] protected conduct."  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

The jury heard the testimony of Aaron, the Defendants, and other witnesses – including Aaron's cellmate – and made decisions regarding the credibility of each

5

witnesses' testimony.  In weighing the evidence and making credibility determinations, the jury concluded that Aaron did not establish a First Amendment retaliation claim.  This verdict was reasonable and was sufficiently supported by credible evidence.

As Defendants point out, there was credible evidence that would allow the jury to conclude that Aaron's allegations were not true and/or insufficient to establish each element of a retaliation claim.  Among other things, the jury could have reasonably concluded that Defendants were not personally involved in, or were not the decision makers behind, moving Aaron's cell, and/or that Aaron's protected conduct (i.e., filing grievances) was not the moving force behind the alleged adverse action(s).  *See Thaddeus-X*, 175 F.3d at 399 ("[I]f the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail.").

Because there was sufficient evidence supporting the jury's verdict of no cause of action, the verdict was reasonable, and the Court will not reweigh the evidence or make credibility determinations to comport with Aaron's interpretation of the evidence. *See Anchor v. O'Toole*, 94 F.3d 1014, 1021 (6th Cir. 1996) (holding that the Court properly denies a motion for new trial where "some competent, credible evidence" supports the verdict); *Maclin*, 2016 WL 1161526, at *2 ("It is the responsibility of the jury to weigh the evidence and to judge the credibility of the witnesses.  The Court cannot reweigh the evidence or substitute its view of the evidence for that of the jury's when there is evidence upon which reasonable minds could differ.").

Aaron fails to show that the verdict was unreasonable or against the great weight of the evidence, and his credibility arguments lack merit.  Aaron is not entitled to a new trial on these grounds.

6

Aaron also is not entitled to a new trial based on information he says should have been presented to the jury (i.e., Holden's alleged "sham affidavit" and false testimony in another case, and the fact that Defendants have been sued by other prisoners) or because Defendants did not call the prison inspectors as witnesses.

Aaron fails to show that Defendants wrongfully prevented him from introducing evidence, and he does not claim that the Court erred in making evidentiary rulings. Neither the Court nor Defendants are obligated to present evidence on Aaron's behalf. If Aaron wanted the jury to consider certain evidence, he should have presented it while litigating his case. His failure to do so does not translate into a new trial.

Moreover, as to the inspectors, the joint final pretrial order states that Defendants "may call" the inspectors as witnesses. [Doc. 86, PgID 956]. Nothing required Defendants to call them as witnesses. Even if Defendants indicated that they were calling the inspectors as witnesses, it would be unreasonable for Aaron to rely on that indication in any circumstance, and especially if – as he says – their testimony was relevant to his case. Like Defendants, Aaron had a right to call or not call any relevant individual on the witness list. Aaron's failure to call the inspectors was his own fault; any prejudice he suffered from not presenting their testimony does not warrant a new trial.

### 2. The Jury Was Not Tainted by Two Potential Jurors During *Voir Dire*

Aaron argues he was denied a fair trial because the jury was tainted:

During jury selection, there were (2) jurors that poisoned the rest of the jurors. . . . [They] complained of being [on] a jury and [said] that they cannot by any circumstances allow a prisoner to prevail. . . . They were even questioned by the Honorable Magistrate David A. Grand . . . and [were] ultimately dismissed by the Judge. . . .However, the damage was

7

> done. They successfully tainted the rest of the jurors . . . [and] Plaintiff
> was ultimately prejudice[d].

[Doc. 102, PgID 1001]. This argument fails for multiple reasons.

First, Aaron rests his argument on the conclusory allegations quoted above. Other than the fact that the jury found in favor of Defendants, Aaron fails to provide any support for his conclusion that the jury was tainted by the opinions of the potential jurors who were ultimately dismissed, and he does not cite any case or other legal authority that establishes a right to a new trial where prospective jurors were dismissed after disclosing relevant biases during *voir dire*.

Importantly, Aaron fails to acknowledge that the purpose of *voir dire* is to expose possible biases of prospective jurors:

> One touchstone of a fair trial is an impartial trier of fact – 'a jury capable and willing to decide the case solely on the evidence before it.' *Voir dire* examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on *voir dire* may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious.

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554 (1984) (internal citation omitted). If courts had to wipe the slate clean and assemble a new jury pool every time a prospective juror revealed a bias against one of the parties, jury selection could be never ending.

The prospective jurors' disclosure that they would not allow a prisoner to prevail in litigation is an example of *voir dire* serving its purpose; contrary to Aaron's claim, exposing those individuals' biases did not deny him a fair trial, but ensured him one.

Moreover, Aaron's argument is further undermined – if not waived – because he failed to move for a new, untainted jury pool (or mistrial) immediately after "the damage was done." Allowing Aaron to raise this argument for the first time after trial and after the jury returned an unfavorable verdict would create a dangerous precedent – especially since he fails to support his conclusory allegations with any evidence of prejudice. Such a ruling would encourage litigants to proceed through trial without objecting/moving for a mistrial – hoping that the jury finds in their favor, but knowing that they could raise the issue if the verdict is unfavorable.

Aaron fails to show that the two prospective jurors tainted the jury or denied him a fair trial. He is not entitled to a new trial for this reason.

### C. Aaron's Supplemental Pleading

In his supplemental pleading, Aaron says he was denied a fair trial because Badawi Abdellatif, M.D., a member of the jury, purposely failed to disclose that: (1) his employer has a contract with MDOC, under which he provides care to MDOC prisoners; and (2) "he has been sued over 26 times by MDOC prisoners." [Doc. 106, PgID 1048].

Defendants argue that the Court should not consider the supplemental pleading because Aaron waited too long to raise this issue, without excuse.

Aaron filed the supplemental pleading on July 6, 2017 – over five months after he filed his motion for new trial. Aaron claims that he only recently discovered this information about Dr. Abdellatif; specifically, he says he came across Dr. Abdellatif's name in another case while doing electronic research for this case, and that he searched the name further because it sounded familiar. Defendants say Aaron could have searched the jurors' names during or after trial, but before filing his motion.

The Court agrees with Defendant; Aaron could have done research on the jurors before filing his motion for new trial. Nonetheless, because Aaron filed the supplement before the Court ruled on the underlying motion, the Court will consider it.

Although Aaron failed to attach or cite to the jury selection transcript, the Court reviewed it. Contrary to Aaron's assertion, Dr. Abdellatif did disclose his employer and the fact that he treated MDOC prisoners as a contract physician.

In fact, Aaron's counsel questioned Dr. Abdellatif regarding his treatment of prisoners, and asked him specifically whether he could issue a fair and just verdict if he served as a juror. Dr. Abdellatif responded that he could deliver a fair verdict, without improperly considering Aaron's status as a prisoner. In response to a different question from Aaron's counsel, Dr. Abdellatif agreed that many prisoners he had interacted with were very nice and good people.

Magistrate Judge Grand also asked Dr. Abdellatif whether he could be a fair juror and deliver a verdict based on the facts and evidence in the case in light of his interactions with prisoners and corrections officers. Dr. Abdellatif affirmed that he could be fair, and said that nothing about his interactions with prisoners and corrections officers would prevent him from being fair.

On the other hand, Aaron is correct that Dr. Abdellatif did not disclose that he has been sued by prisoners. However, no one asked Dr. Abdellatif during *voir dire* whether he has been sued, and he was not asked any other question that should have elicited a response regarding his litigation history. Dr. Abdellatif did not have a duty to affirmatively volunteer information related to his litigation history. *See United States v. Ledford*, Nos. 96-5659, 96-6589, 1997 WL 659673, at *3 (6th Cir. Oct. 22, 1997) ("It is

not the responsibility of a prospective juror to anticipate and then volunteer every piece of information that might conceivably be of use to counsel."). Because Dr. Abdellatif had no duty to volunteer information related to his litigation history, his failure to do so is irrelevant, and he did not maliciously withhold information or mislead the Court, as Aaron summarily contends.

Moreover, "where the partiality of a particular juror is at issue, the relevant question is 'did a juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestations of impartiality have been believed.'" *Smith v. Jones*, No. 05-72971, 2010 WL 3069781, at *3 (E.D. Mich. July 26, 2010) (quoting *Patton v. Yount*, 467 U.S. 1025, 1036 (1984)). Here, Dr. Abdellatif said several times under oath that he could be impartial and decide the case based on the evidence; no evidence suggests he was lying.

In order to obtain a new trial based on a juror's non-disclosure during *voir dire*, the moving party "must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984).

Because Aaron cannot demonstrate that Dr. Abdellatif failed to answer honestly a material question on *voir dire*, the Court need not address the second prong of the test set forth in *McDonough*. Aaron is not entitled to a new trial on this ground.

### III. CONCLUSION

Aaron's motion for new trial [Doc. 102] is **DENIED**. The Court **TERMINATES** Radner and his co-counsel as Aaron's attorneys of record on the docket.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 22, 2017